Argued and submitted December 15, 2020; reversed and remanded on
Counts 30, 35, 36, and 37, otherwise affirmed April 6, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RAJI AFIFE AZAR,
*Defendant-Appellant.*

Multnomah County Circuit Court
18CR28295; A170612

509 P3d 668

In this criminal case, defendant repeatedly bought property that he believed to be stolen and then, using a computer and the internet, he sold that property on eBay. For that and other related conduct, defendant was convicted of, among other crimes, computer crimes under ORS 164.377(2). On appeal, he contends that the trial court erred by (1) denying his motions for judgment of acquittal as to several computer crime counts, (2) instructing the jury that it could return nonunanimous guilty verdicts, and (3) accepting nonunanimous guilty verdicts on Counts 30, 35, 36, and 37. As to the denial of his motions for judgment of acquittal, he argues that the computer crime statute did not apply to his conduct, because that statute was originally intended to combat computer hacking, not the incidental use of a computer to commit theft. He also argues that, if the statute was construed to reach his conduct, such construction would render the statute unconstitutionally vague. *Held*: The trial court's acceptance of nonunanimous guilty verdicts on Counts 30, 35, 36, and 37 required reversal and remand of those counts. Defendant was not, however, entitled to reversal on the remaining counts, which were based on unanimous verdicts. The Court of Appeals also concluded that the legislature intended for the computer crime statute to reach defendant's conduct, and that the statute was not rendered unconstitutionally vague by that construction. Thus, the trial court did not err in denying defendant's motions for judgment of acquittal.

Reversed and remanded on Counts 30, 35, 36, and 37; otherwise affirmed.

Kenneth R. Walker, Judge.

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Mooney, Presiding Judge, and Pagán, Judge, and DeVore, Senior Judge.*

MOONEY, P. J.

Reversed and remanded on Counts 30, 35, 36, and 37; otherwise affirmed.

Pagán, J., concurring in part, dissenting in part.

_____

* Pagán, J., *vice* DeHoog, J. pro tempore.

**MOONEY, P. J.**

Defendant repeatedly bought property that he believed to be stolen and then, using a computer and the internet, he sold that property on eBay. For that and other related conduct, defendant was convicted of multiple counts of attempted first-degree theft, ORS 161.405 and ORS 164.055, and computer crime, ORS 164.377, as well as laundering a monetary instrument, ORS 164.170, and conspiracy, ORS 161.450. On appeal, he contends that the trial court erred by (1) denying his motions for judgment of acquittal on the computer crime counts, (2) instructing the jury that it could return nonunanimous verdicts, and (3) accepting nonunanimous guilty verdicts on four of the counts with which he was charged. For the reasons that follow, we reverse defendant's four convictions that were based on nonunanimous verdicts, but otherwise affirm.

## I.   NONUNANIMOUS VERDICTS

We begin with assignments of error four through 12 in which defendant challenges the court's instruction to the jury that it could convict defendant on nonunanimous verdicts, the court's acceptance of nonunanimous verdicts on Counts 30, 35, 36, and 37, and its entry of convictions on those counts. The state properly concedes the instructional error under *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). Accepting the jury's nonunanimous verdicts on Counts 30, 35, 36, and 37 requires reversal and remand of those counts. *Id.* Defendant is not, however, entitled to reversal on the remaining counts, which were based on unanimous verdicts. *State v. Flores Ramos*, 367 Or 292, 478 P3d 515 (2020); *see also State v. Ciraulo*, 367 Or 350, 478 P3d 502 (2020), *cert den*, ___ US ___, 141 S Ct 2836 (2021).

Because Counts 30, 35, 36, and 37 are to be remanded for a new trial, we turn to defendant's first three assignments of error in which he assigns error to the court's denial of his motion for judgment of acquittal as to those computer crime counts. *See generally State v. Witt*, 313 Or App 479, 493 P3d 543 (2021) (considering whether the trial court erred in denying the defendant's motion for judgment of acquittal notwithstanding the trial court's error in accepting a nonunanimous jury verdict).

## II.  STANDARD OF REVIEW

When, as here, denial of a defendant's motion for judgment of acquittal (MJOA) "centers on the meaning of the statute defining the offense," we review the trial court's interpretation of that statute for legal error. *State v. Hunt*, 270 Or App 206, 210, 346 P3d 1285 (2015). We review the sufficiency of the evidence by reviewing the facts in the light most favorable to the state to determine whether a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *State v. Tecle*, 285 Or App 384, 386, 396 P3d 955 (2017).

## III.  FACTUAL BACKDROP

Defendant was convicted of numerous crimes following a retail theft investigation conducted initially by private investigators and then law enforcement personnel. In January 2018, investigators for Fred Meyer and Safeway observed defendant buy merchandise that he believed to be stolen, but that was not stolen, because one of the investigators provided the merchandise to a known shoplifter to sell to defendant in order to gather evidence on defendant's fencing operation. Over the next months, undercover investigators for Fred Meyer developed a relationship with defendant and conducted a series of transactions in which undercover employees sold merchandise to defendant under the pretense that the merchandise had been shoplifted or otherwise stolen.[1]

Around the same time, it was suspected that defendant was using eBay to sell the stolen items that he had purchased in the undercover transactions. Investigators identified an eBay account with the name "ellabellesbotique" associated with the same location and selling the same kind of property that the Fred Meyer investigators had been selling to defendant. The investigators purchased items from that account, some of which had the same invisible ink marks with which they had marked the items before selling them to defendant.

---

[1] For the purposes of this appeal, we need not, and do not, provide a detailed recitation of the factual circumstance surrounding those transactions.

eBay is a website that allows people to buy or sell items on the internet. To sell items, a person must create a profile on eBay by accessing the website and creating an account. Each account requires a unique username and password. Once an account is set up, users can sell items on any computer or mobile device and upload pictures of their items for sale. eBay processes payments for items through a platform called PayPal. A buyer may pay for an item through PayPal or pay directly by using a credit or debit card. In order to use PayPal, the buyer and seller must each have an account with PayPal. Once a buyer's payment is processed through PayPal, the funds are transferred to the seller's PayPal account. The seller is then able to transfer those funds to a personal bank account by linking the seller's PayPal account and the personal account.

Eventually, the investigation into defendant's fencing operation was turned over to law enforcement. Detective Fields of the Portland Police Bureau arranged another undercover transaction with defendant, and defendant was arrested after the transaction. Fields obtained a search warrant for defendant's home. At the house, Fields and other officers found "just mountains of" the type of property that had been sold to defendant by the investigators. They also found shipping materials. Police had to use multiple vans to remove the property from the home.

Defendant was interviewed by Fields after the search. Defendant described in detail how he worked with different people he knew to be thieves to purchase stolen property, used eBay to resell the property on his sister's account because his own account had been blocked, and forwarded the proceeds in her account to his own PayPal account and then transferred it to his personal bank account. He told the detective that he had "been doing this a long time."

## IV.   PROCEDURAL BACKDROP

Defendant was indicted on multiple crimes, including 17 counts of felony computer crime under ORS 164.377(2).[2]

---

[2] ORS 164.377(2) provides:

"Any person commits computer crime who knowingly accesses, attempts to access or uses, or attempts to use, any computer, computer system, computer network or any part thereof for the purposes of:

The computer crime counts alleged that, on various occasions, defendant

> "did unlawfully and knowingly access and use a computer, computer system, and computer network for the purpose of committing theft of property by receiving/selling[.]"

Defendant's case was tried to a jury.

At the close of the state's evidence, the trial court granted defendant's MJOA on 14 of defendant's computer crime counts. As to the remaining computer crime counts, defendant moved for judgment of acquittal on the grounds that the state failed to establish that he had used and accessed a computer system for the purposes of committing theft within the meaning of ORS 164.377(2).[3] He argued that the legislature enacted that statute to combat computer hacking and that, because there was no evidence that he hacked into any computer system, no reasonable juror could conclude that he violated the statute. The court denied the motion, and defendant was ultimately found guilty of, among other crimes, three counts of felony computer crime.

On appeal, defendant argues that the trial court erred in denying his MJOA. He argues that ORS 164.377(2) does not apply to his conduct, because the legislature enacted the statute to combat computer hacking, and there is no evidence that he engaged in computer hacking. He contends that the legislature did not intend for ORS 164.377(2) to apply to his "use of a publicly accessible website for its intended purpose"—the buying and selling of merchandise—even if the object was to commit theft. In support of his argument, defendant relies on the statute's plain text and legislative history, arguing that application of the statute to his conduct would require an expansive construction of

---

"(a)  Devising or executing any scheme or article to defraud;

"(b)  Obtaining money, property or services by means of false or fraudulent pretenses, representations or promises; or

"(c)  Committing theft, including, but not limited to, theft of proprietary information or theft of an intimate image."

[3]  Defendant did not contest that the evidence was sufficient to prove that his conduct involved a computer, computer system, and computer network, and he does not make that argument on appeal. Thus, for the sake of brevity, we refer to those three things collectively as a "computer system."

ORS 164.377(2) which would, in turn, result in constitutional vagueness problems. The state responds that the trial court did not err in denying defendant's motion, because the statute was intended to criminalize the direct use or access of a computer system for specific, unlawful purposes and, further, that that construction does not render the statute void for vagueness.

## V.  ANALYSIS

Our task is to determine whether the legislature intended the phrase, "accesses, attempts to access or uses" a computer or computer system, in ORS 164.377(2), to apply to defendant's conduct. Our goal is to determine the legislature's intent. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). We do that by examining the text and context of the statute, as well as legislative history if it is useful to our analysis. *Id.* at 171-72.

A.  *The plain text does not support defendant's position.*

We start with the text of ORS 164.377(2), beginning with

> "Any person commits computer crime who knowingly ***accesses***, attempts to access ***or uses***, or attempts to use, any computer, computer system, computer network or any part thereof for the purposes of:
>
> "(a)  Devising or executing any scheme or artifice to defraud;
>
> "(b)  Obtaining money, property or services by means of false or fraudulent pretenses, representations or promises; or
>
> "(c)  Committing theft, including, but not limited to, theft of proprietary information or theft of an intimate image."

(Emphases and boldface added.) "[A]ccess" is defined as

> "to instruct, communicate with, store data in, retrieve data from or otherwise make use of any resources of a computer, computer system or computer network."

ORS 164.337(1)(a). "Otherwise" is commonly defined as "in a different way or manner." *Webster's Third New Int'l*

*Dictionary* 1598 (unabridged ed 2002). The common definitions of "make" include "to bring about," "cause to happen," and "cause to exist, occur, or appear." *Id.* at 1363. Thus, the phrase "otherwise makes use of," means that a person "access[es]," a computer by "caus[ing]" the "use" of the computer to happen in a "way or manner" different from one of the specific examples listed in the definition.

Although the legislature did not define the word "use" for purposes of ORS 164.377(2), we considered its meaning in *Tecle*. That case concerned a defendant who was convicted of computer crimes under ORS 164.377(2) for giving false information to various bank employees who entered that false information into the computer systems of two banks to create bank accounts for the defendant from which funds were illegally withdrawn. 285 Or App at 386-87. ORS 164.377(2) was applied to the defendant's conduct on the theory that, by inducing the bank employees to enter the banks' computer database, he "used" a computer for purposes of the statute. *Id.* at 387. Engaging in our traditional method of statutory construction, we concluded that the legislature "did not intend to turn ordinary theft or fraud into a computer crime merely when the victim's employee made authorized use of a computer, doing ordinary data entry, and when the perpetrator did not directly access or manipulate the computer." *Id.* at 392-93. We, thus, reversed the defendant's computer crime convictions.

We need not repeat the *Tecle* analysis in detail here, because there is no dispute that defendant personally and directly "used" a computer to sell goods on eBay. Of course, defendant's "use" of a computer must have been "for the purposes of" one of the objectives identified in ORS 164.377(2)(a) through (c). "Purpose" is commonly defined as "something that one sets before himself as an object to be attained: an end or aim to be kept in view in any plan, measure, exertion, or operation: DESIGN." *Webster's* at 1847. Thus, defendant must have directly accessed or used a computer for the end or aim of "[d]evising or executing any scheme or article to defraud; *** [o]btaining money, property or services by means of false or fraudulent pretenses, representations or promises; or *** [c]ommitting theft, including, but not

limited to, the theft of proprietary information or theft of an intimate image." ORS 164.377(2)(a)-(c).

Defendant argues that the phrase "committing theft, including, but not limited to, theft of proprietary information and theft of an intimate image" in ORS 164.377(2)(c) supports his position that the statute excludes his use of a computer from the definition of computer crime. He asserts that the two examples of theft inform the meaning of "committing theft" as used in that provision. He reasons that, because "theft of proprietary information" and "theft of an intimate image" have in common the idea of "taking something from a computer that exists in that computer," the legislature intended for the statute to only reach conduct that involves "taking" or "extracting" proprietary information or an intimate image from the computer and "turning it to [one's] own purpose." He therefore argues that, because he did not extract information from eBay, his conduct does not fall within the meaning of the statute as intended by the legislature.

Defendant's argument invokes the interpretive principle of *noscitur a sociis*, which means "it is known by its associates," sometimes colloquially referred to as "birds of a feather," *see* Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012), and refers to the concept that "the meaning of words in a statute may be clarified or confirmed by reference to other words in the same sentence or provision." *Daniel L. Gordon, PC v. Rosenblum*, 361 Or 352, 365, 393 P3d 1122 (2017) (*Gordon*) (quoting *Goodwin v. Kingsman Plastering, Inc.*, 359 Or 694, 702, 375 P3d 463 (2016)). *Gordon* is instructive regarding the application of that principle. In *Gordon*, one of the issues was whether ORS 646.607(1), which prohibited the use of "unconscionable tactic[s]" to collect debts, applied to the plaintiff's debt collection activities. *Id.* at 354. The term "unconscionable tactic," as used in that subsection, was defined by another statute, ORS 646.605(9), which provided that "'[u]nconscionable tactics' include, but are not limited to, [list of four examples]." *Id.* at 358.

In construing the statute, the court first examined the meaning of "unconscionable tactics," and then

determined whether the surrounding text, including the four examples in ORS 646.605(9), clarified the meaning of that term. Recognizing that "unconscionability" is a legal term of art, the court looked to the term's "established legal meaning," which, in that case, involved consulting with *Black's Law Dictionary* and examining the term's usage within the context of the common law. *Id.* at 361-64. Having determined that the common-law doctrine of "unconscionability" provided no basis for excluding the plaintiff's conduct from the statute, the court looked to determine whether the examples in ORS 646.605(9) shared any common characteristics that would illuminate the meaning of "unconscionable tactic[s]" as used in the statute. *Id.* at 365. It observed that the first three examples of "unconscionable tactics" were described in the context of an "agreement or transaction," whereas the fourth example did not reference any sort of transaction. *Id.* (internal quotation marks omitted). Thus, the court concluded that a "transaction or agreement" was not a required characteristic of that term. *Id.* Finally, the court turned to the text surrounding "unconscionable tactic," specifically, the language "in connection with *** collecting or enforcing an obligation." *Id.* at 365-66; ORS 646.607(1). The court determined that that language suggested that the statute applied to plaintiffs' debt collection activities because those activities were conducted "in connection with" an obligation. *Gordon*, 361 Or at 366.

Engaging in a similar analysis as we construe ORS 164.377(2)(c), we conclude that "theft of proprietary information" and "theft of an intimate image" do not limit the scope of that provision to theft that involves taking or extracting information from a computer.

Theft is a legal term of art that is defined by Oregon's Criminal Code and thus has an "established legal meaning." *Gordon*, 361 Or at 361. "[A] person commits theft when *** the person" either (1) "[t]akes, appropriates, obtains or withholds" property that belongs to another person; (2) "[c]ommits theft of property lost, mislaid, or delivered by mistake"; (3) "[c]ommits extortion *** by compelling or inducing another person to deliver property"; (4) "[c]ommits theft by deception"; or (5) "[c]ommits theft by receiving."

ORS 164.015. ORS 164.015, thus, describes the different categories of conduct that qualify as theft. It does not, however, indicate whether a person commits theft for purposes of ORS 164.377(2)(c)—qualifying the theft as a computer crime—only when the person takes or extracts something from a computer, or whether one commits theft and, thus, computer crime, by using a computer as the means to accomplish the theft.

Turning to the context in which ORS 164.377(2) resides, we note that the two examples of theft in that provision include "theft of proprietary information" and "theft of an intimate image." ORS 164.377(2)(c). "Proprietary information" means

> "any scientific, technical or commercial information including any design, process, procedure, list of customers, list of suppliers, customers' records or business code or improvement thereof that is known only to limited individuals within an organization and is used in a business that the organization conducts. The information must have actual or potential commercial value and give the user of the information an opportunity to obtain a business advantage over competitors who do not know or use the information."

ORS 164.377(1)(k). An "intimate image" is defined as "a photograph, film, video, recording, digital picture or other visual reproduction of a person whose intimate parts are visible or who is engaged in sexual conduct." ORS 164.377(1)(h).

In light of those definitions, we conclude that the legislature did not intend to limit ORS 164.377(2)(c) to the taking or extracting of information or content from a computer system. The definitions appear superficially to have in common the characteristic that the theft must involve a thing that exists on a computer or otherwise located somewhere in a computer network. However, a closer look at the definition of "intimate image" suggests that the thing could be either a digital or a physical object, evidenced by the inclusion of "photograph" in contrast to "digital picture." The statute would, therefore, reach the conduct of a person who, for example, sells stolen physical copies of intimate images on the internet. And because the definition of "intimate image" does not require the image to be in digital form, we

reject defendant's argument that "committing theft" is limited to the extraction of information from a computer.[4]

Moreover, the plain text of ORS 164.377(2) does not support defendant's position that the statute requires the illicit use of a computer system. Nothing in the text of the statute suggests that the "access" or "use" of a computer must be done without authorization or permission. Indeed, defendant's reading of the statute would require us to insert words that the legislature omitted, which we are not permitted to do. ORS 174.010. Accordingly, we conclude that ORS 164.377(2) is not limited by its terms to the concept of computer hacking. Rather, we conclude that the plain text means that, to violate the statute, a person must "use" or "access" a computer as the direct, necessary means by which the person achieves one of the statute's prohibited ends.

B.   *The context of the statute confirms our understanding of the plain text.*

"In construing a statute, 'we do not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole.'" *State v. Carpenter*, 365 Or 488, 495, 446 P3d 1273 (2019) (quoting *Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997)). That means, in examining context, we look to "other provisions of the same statute." *Wetherell v. Douglas County*, 342 Or 666, 678, 160 P3d 614 (2007).

We now turn our attention to other relevant subsections of ORS 164.377 for additional clues about legislative

---

[4] The legislative history of ORS 164.377 supports that conclusion. The legislature added "including, but not limited to, theft of proprietary information or theft of an intimate image" in the years following the enactment of the statute. *See* Or Laws 1985, ch 537, § 8 (statute as enacted); Or Laws 1989, ch 737, § 1 ("theft of proprietary information" added); Or Laws 2015, ch 350, § 1 ("theft of an intimate image" added). A staff summary related to the "theft of an intimate image" amendment states that, during a public hearing held by the Senate Judiciary Committee, "there was testimony and discussion about whether Oregon's theft statutes prohibited the theft of digitized images. Specifically, there was discussion about the monetary 'value' of digitized intimate images." Staff Measure Summary, Senate Committee on Judiciary, SB 377 B, Apr 2, 2015. Subsequently, the legislature modified the provision to include "theft of an intimate image." Thus, the legislative history of the "theft of an intimate image" amendment suggests that the legislature intended to broaden the scope of the statute by including the theft of digitalized images.

intent. Subsections (3) and (4) provide the alternative definitions of computer crime:

> "(3)   Any person who knowingly and without authorization alters, damages or destroys any computer, computer system, computer network, or any computer software, program, documentation or data contained in such computer, computer system or computer network, commits computer crime.

> "(4)   Any person who knowingly and without authorization uses, accesses or attempts to access any computer, computer system, computer network, or any computer software, program, documentation or data contained in such computer, computer system or computer network, commits computer crime."

Notably, both of those definitions use the term "without authorization" to modify the conduct that is prohibited by each subsection, and, in contrast, that term is absent from subsection (2).

The context of the statute demonstrates that the legislature did not intend to require that a person engage in "computer hacking," or otherwise illicitly "use" or "access" a computer, in order to transgress ORS 164.377(2). The inclusion of the term "without authorization" in subsections (3) and (4) demonstrates that the legislature understood the distinction between authorized and unauthorized use of a computer or computer system. The legislature chose to omit that term from subsection (2). That supports that the legislature did not intend that subsection (2) require proof of "computer hacking" or other illicit use of the computer itself.

C.   *Our construction of the statute avoids constitutional vagueness.*

We turn to defendant's vagueness argument. He contends that a "broad construction of ORS 164.377(2)" that extends its reach beyond "computer hacking" would render the statute unconstitutionally vague. He reasons that a broad construction would (1) "leave it entirely to the discretion of district attorneys, judges, and juries" to decide whether any particular "access" or "use" is prohibited by the terms of the statute; and (2) make it "impossible for any

person of ordinary intelligence to understand the scope of what that statute prohibits."

We begin with defendant's unlawful delegation argument. A criminal statute offends the principle against *ex post facto* laws under Article I, section 21, of the Oregon Constitution, if the statute "be so vague as to permit a judge or jury to exercise uncontrolled discretion in punishing defendants." *State v. Graves*, 299 Or 189, 195, 700 P2d 244 (1985). Additionally, the equal privileges and immunities clause in Article I, section 20, "is also implicated when vague laws give unbridled discretion to judges and jurors to decide what is prohibited in a given case." *Id.* To avoid vagueness challenges under Article I, sections 20 and 21, however, a criminal offense need not be defined "with such precision that a person in every case can determine in advance that a specific conduct will be within the statute"; rather, what is required is a "reasonable degree of certainty." *Id.*

Our construction of ORS 164.377(2) does not create unlawful discretion issues under the state constitution. As stated above, a person violates the statute when the person's use or access of a computer is the direct, necessary means by which the person accomplishes one of the prohibited purposes in ORS 164.377(2)(a) through (c). That interpretation provides a "reasonable degree of certainty" regarding what is prohibited under the statute. *Graves*, 299 Or at 195. Therefore, we conclude that ORS 164.377 is not impermissibly vague under Article I, sections 20 and 21.

We likewise conclude that our interpretation of the ORS 164.377(2) does not create an unlawful delegation issue under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Under that provision, a criminal statute is unconstitutionally vague if it allows for unlawful delegation or unequal or discretionary application. *State v. Illig-Renn*, 341 Or 228, 240, 142 P3d 62 (2006). That occurs when the statute "either contains no identifiable standard * * * or employs a standard that relies on the shifting and subjective judgment of the persons who are charged with enforcing it." *Id.* (internal citation omitted). For the reasons we have stated, we conclude that our construction

of ORS 164.377(2) does not create vagueness problems under the federal due process requirement, because it provides an "identifiable standard" of what is proscribed by the statute. *Id*.

We conclude also that our construction of ORS 164.377(2) does not render that statute vague for lack of fair warning required by the Due Process Clause of the Fourteenth Amendment. Our construction of ORS 164.377(2) would allow a person of ordinary intelligence to understand the scope of what is prohibited by that statute. And that is constitutionally sufficient. *Grayned v. City of Rockford*, 408 US 104, 108, 92 S Ct 2294, 33 L Ed 2d 222 (1972).

D.    *Defendant's conduct violated ORS 164.337(2).*

As we have explained, to violate ORS 164.337(2), a person must "use" or "access" a computer as the direct, necessary means by which the person achieves one of the prohibited ends listed in the statute. The person's "use" or "access" of a computer system must be more than incidental, but it does not require the act of "computer hacking" as that term is commonly understood. The dissent expresses the view that this was just "common theft," and it suggests that defendant "happened to be using an electronic device" while committing common theft. 318 Or App at 739 (Pagán, J., concurring in part, dissenting in part). But that is not what happened. Defendant used his computer and the internet repeatedly for *the purpose of committing theft*. Defendant operated an ongoing virtual marketplace, via eBay, designed as the principal mechanism for his extensive fencing operation. His use of that computer network was both direct and necessary to the accomplishment of his criminal intent. This is not a case where defendant used a computer, or a smart phone, incidentally to a crime. What occurred here went far beyond exchanging texts, or email, or using a computer to navigate, or look up information. Here, defendant's virtual shop *was* his criminal enterprise. Under ORS 164.377(2), defendant committed computer crime. The trial court did not err in denying defendant's MJOA.

Reversed and remanded on Counts 30, 35, 36, and 37; otherwise affirmed.

**PAGÁN, J.,** concurring in part, dissenting in part.

When the legislature first enacted ORS 164.377 in 1985, its members could not have foreseen the ubiquitous nature of computers and networks in our daily lives nearly 40 years later. It is not reasonably disputed that the legislative intent behind the enactment of the computer crime statute was to address two specific things: cable television theft and computer hacking. *See* Or Laws 1985, ch 537, §§ 1-8. In this case, the appellant was charged with doing neither. Rather, the appellant was charged with, in a word, fencing. Fencing is otherwise known as selling stolen property, or, as our legislature defines it: theft by receiving, ORS 164.095(1). Theft by receiving falls under the general definition of theft in ORS 164.015(5), and thus requires an allegation regarding circumstances, conduct, or value to determine which degree of theft is the appropriate charge. For instance, if a person sells less than $100 of stolen goods, then that person would be guilty of theft in the third degree, a Class C misdemeanor, which carries a maximum jail sentence of 30 days. ORS 161.615(3); ORS 164.043. Theft in the first degree requires more serious allegations, such as selling stolen property valued over $1,000 or specific circumstances, such as theft occurring during a riot. ORS 164.055. Theft in the first degree is a Class C felony, which carries a maximum prison sentence of five years in prison. ORS 161.605(3).[1] Put simply, the majority's decision would allow the state to charge someone with a Class C felony when the legislature intended that person to be charged with a Class C misdemeanor. I dissent because I conclude that the text of the statute along with the legislative history and contextual clues indicate that the legislature did not intend to allow the state to artificially inflate criminal charges if the accused happened to be using an electronic device while committing a crime.[2]

There is no indication in any of the legislative history that the common crime of theft by receiving would be

_____

[1] Notably, theft in the first degree and computer crime are both listed as predicate crimes in ORS 137.717(2), subjecting a defendant with multiple convictions to a presumptive minimum prison sentence under what is commonly known as "repeat property offender" laws, or Measure 57. Theft in the third degree, however, is not a predicate crime under ORS 137.717.

[2] I concur with the majority's conclusion related to defendant's jury-instruction challenge raised in assignments of error four through 12.

covered by ORS 164.377. The legislative history is replete with discussions regarding cable television theft and some discussions of hacking or industrial espionage. *See, e.g.*, Tape Recording, House Committee on Judiciary, Subcommittee 1, HB 2795, May 6, 1985, Tape 576, Side B (statements of Dave Overstreet and Sterling Gibson). There was no discussion in the legislature about using computers to commit crimes such as common theft. The statute was amended in 1989 to state the following: "Committing theft, *including, but not limited to, theft of proprietary information*," and, in 2015, to add: "*or theft of an intimate image*." ORS 164.377(2)(c) (emphases added to highlight amendments); Or Laws 1989, ch 737, § 1; Or Laws 2015, ch 350, § 1. The majority correctly infers that the legislature's addition of those phrases signified an intent to broaden the scope of the statute. The majority posits that we should view the entirety of the amended section to be inclusive and expansive, rather than narrow, despite how that would conflict with the narrow goal the legislature had with the statute when it was first enacted. But if the majority's presumption as to the legislative intent is correct regarding those amendments, does it not follow that the legislature believed the statute was narrow and, thus, needed to be expanded so that such property as may be found in cell phones and other devices was properly covered? Put another way, if the majority's presumption that the word theft should be read expansively was true before the amendments, why were the amendments needed at all?

The more consistent inference to draw from the amendments is that the legislature believed that the statute was intended to cover a narrow range of criminal activity that was specific to the unauthorized use of computers or unauthorized access to computer networks, and they wanted to ensure that particular types of theft of intellectual property or images was covered by the statute. It is reasonable to infer that the legislature intended computer crimes to be analogous to burglary—that is, accessing a place a person is not allowed to be with the intention of committing a crime *in that place*. In this context, the crime is to knowingly access a computer or network for the purpose of stealing something *from that computer or network*.

That conclusion is supported by the use of either of two statutory interpretation maxims applicable here, *noscitur a sociis* or *ejusdem generis*. As noted by the majority, *noscitur a sociis* is the principle of using certain terms within a statute to assist in interpreting other terms within the statute. *See Daniel N. Gordon, PC v. Rosenblum*, 361 Or 352, 365, 393 P3d 1122 (2017). The terms at issue here are "access" and "use" and their relation to "theft." Standing alone, the words could easily be inferred to mean what the majority concludes: using any computer or network to commit any theft is a computer crime. But when you consider that the legislature added specific terms to the concept of theft that clarify that the access and theft entail stealing from the computer or network themselves, it becomes more difficult to justify that conclusion.

The majority concedes that the terms "proprietary information" and "intimate image" "superficially" have the common characteristic of existing on a computer. The logical inference from those terms, along with the focus of the legislative history, point to a clear result: the statute was meant to cover the crime of accessing or using a computer or network to get something out of that computer or network. To overcome that inference, the majority then notes that one could imagine a scenario where someone stole intimate images *in physical form* and incidentally used a computer to sell them. That hypothetical, the majority posits, demonstrates that the legislature clearly intended to broaden the scope of the statute to, well, fencing. To support that conclusion, the majority argues that the legislative history for those amendments includes concerns about the difficulty in valuing digital images, which, if correct, corroborates its conclusion that the legislature intended for nondigital images to be subject to the law. But that conclusion raises another confounding question: why would the legislature include such language *in this statute* if it were concerned about whether *any* prosecution for digital images could proceed under current theft laws?

The maxim of *ejusdem generis* leads to the same result. *Ejusdem generis* is the principle that a general term may be narrowed by more specific terms in a statute, or

vice versa. *McLaughlin v. Wilson*, 365 Or 535, 551, 449 P3d 492 (2019). When legislative intent is clear, we must employ the maxim in a manner that avoids a result contrary to the intent. *See State v. Mayorga*, 186 Or App 175, 183, 62 P3d 818 (2003); ORS 174.020(1) (courts "shall pursue the intention of the legislature if possible"). What I gather from the amendments is that the legislature believed the statute to be narrow, and thus there was a need to include specific terms lest a prosecutor believe that they lacked authority to charge someone for stealing proprietary information or intimate images, as those were not the concerns the legislature dealt with in 1985. So while the majority takes the amendments to mean that the legislature intended to broaden the scope of the statute and, therefore, the scope was already quite broad, I read it the other way: the legislature believed the statute to be narrow, and it needed to expand the statute to ensure crimes that were developing with new technology were covered by the statute.[3] To read otherwise, in my opinion, makes the amendments superfluous and meaningless. If the majority is correct, *all property* is already covered by the statute and there was no need to list, in two separate amendments, 26 years apart, specific examples of property protected by ORS 164.377.

The legislature created a statute to combat two specific things: hacking and cable television theft. As time passed and computers became more common in households, the legislature expanded the law to include hacking to gain access to proprietary information (1989), and hacking to take someone's intimate photos off their phone or computer (2015).[4] The logical inference is that the legislature believed

---

[3] That is true even if one believes that *ejusdem generis* should not be applied because of the use of the phrase "including, but not limited to" in the statute. Our courts have noted that there are times when *ejusdem generis* may not be applicable with the use of "including, but not limited to" before a list of specific examples, as it may indicate that the legislature meant to broaden the meaning of an otherwise plain term with the accompanying list and that the list is nonexclusive. *See State v. Kurtz*, 350 Or 65, 75, 249 P3d 1271 (2011).

[4] It should also be noted that the legislature specifically included the phrase "intimate" images, indicating an awareness of the probability of one's intimate images being contained on a computer that easily captures such photographs: a smartphone. That again raises a question: if digital images were a concern because, at that point, the legislature had no methodology of providing them with an intrinsic value to use for the theft statutes under ORS chapter 164, why would

that the law was intended to address the type of criminal activity we most associate with hacking or other nefarious access to networks or computers, not simply the use of electronics to commit crimes.

Taking then the majority's invitation to hypothesize the outcomes of its reading of the statute, one quickly finds that the bounds of computer crime have expanded exponentially in the last two and one-half decades. Using the definition of "computer" in the statute—a "high speed data processing device that performs logical, arithmetic or memory functions"—a person commits a computer crime, and, thus, a Class C felony, if they: (a) text someone on a smartphone to sell a stolen item worth $30.00; (b) drive a modern vehicle with a GPS system to a location where they steal $30.00 worth of property; (c) use a mapping application on a phone to assist them in stealing $30.00 worth of property; (d) use a smartwatch in any manner to assist them in stealing $30.00 worth of property; or (e) take a picture of $30.00 worth of stolen property with their phone in an effort to sell it. In all of those instances, an accused would be facing a maximum of 30 days in jail if convicted of the underlying theft. After today's opinion, the state may choose, at its leisure, to turn a case that would likely result in days in jail into a case where an accused is facing years in prison, all because they possessed and used a ubiquitous device in a way that has no relation to hacking.

Concurring in part, dissenting in part.

---

the legislature so narrowly define the property as intimate and include the language in ORS 164.377, but not include such language in any other statute related to theft? Again, a reasonable inference is that the legislature was concerned that this narrow, but important, type of property was a likely target of the hacking type offenses the statute was originally designed to address.