No. 20　　　　　July 20, 2023　　　　　285

IN THE SUPREME COURT OF THE
STATE OF OREGON

SHEPARD INVESTMENT GROUP LLC,
an Oregon limited liability company,
dba Umbrella Properties Management,
*Respondent on Review,*

*v.*

Bret Lee ORMANDY,
an individual and all other occupants,
*Petitioner on Review.*

(CC 19LT16199) (CA A173257) (SC S069726)

On review from the Court of Appeals.*

Argued and submitted March 6, 2023, at Lewis & Clark Law School, Portland, Oregon.

Matthew G. Shepard, Salem, argued the cause and filed the brief for petitioner on review.

John R. Roberts, Arnold Gallagher P.C., Eugene, argued the cause and filed the brief for respondent on review.

Kristen G. Williams, Williams Weyand Law, LLC, McMinnville, filed the briefs for *amicus curiae* Oregon Trial Lawyers Association.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, Bushong and James, Justices, and Nakamoto, Senior Judge, Justice pro tempore.

JAMES, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

Nakamoto, S. J., dissented and filed an opinion.

_____

　* Appeal from Lane County Circuit Court, Kamala H. Shugar, Judge. 320 Or App 521, 514 P3d 1125 (2022).

**JAMES, J.**

In this forceable entry and detainer (FED) action, we are asked to determine the proper calculation of damages that may be awarded to a tenant, following multiple instances of landlord noncompliance with certain utility billing requirements that repeated each month, over a series of months. ORS 90.315, part of the Oregon Residential Landlord and Tenant Act (ORLTA), governs the inclusion of utility or public service charges, such as for sewer or water service, in rental agreements. Subsection (2) of that statute concerns disclosure, requiring landlords to "disclose to the tenant in writing at or before the commencement of the tenancy any utility or service that the tenant pays directly to a utility or service provider that benefits, directly, the landlord or other tenants." Subsection (4) concerns pass-through billing, stating that a landlord "may require a tenant to pay to the landlord a utility or service charge or a public service charge that has been billed by a utility or service provider to the landlord." However, paragraph (4)(b) conditions pass-through billing upon a number of procedural requirements, such as billing the tenant within 30 days, setting out the utility or service charge separately from rent, and providing copies of the service provider's bill or an opportunity to inspect it. If a landlord engages in pass-through billing for public service charges without having met all of the conditions of ORS 90.315(4), a tenant may recover "an amount equal to one month's periodic rent or twice the amount wrongfully charged to the tenant, whichever is greater." ORS 90.315(4)(f).

Here, after plaintiff (landlord) brought an FED action against defendant (tenant) to recover possession of the landlord's premises, tenant alleged a counterclaim that landlord had failed to comply with certain utility billing requirements found in ORS 90.315(4)(b). The trial court agreed with tenant, concluding that landlord had committed 12 separate violations—one per month over the 12 months within the one-year statute of limitations that governs ORLTA actions, ORS 12.125—and awarded tenant statutory damages in an amount equal to 12 months of rent. On landlord's appeal, the Court of Appeals reversed, concluding that the plain text of ORS 90.315(4)(f) showed

that the legislature had not intended for each landlord billing violation to be subject to a separate sanction. *Shepard Investment Group LLC v. Ormandy*, 320 Or App 521, 531, 514 P3d 1125 (2022). We allowed review and now affirm the decision of the Court of Appeals and reverse the judgment of the trial court.

The relevant facts are not in dispute. Landlord owns the Fairfield Village Apartments, and tenant has rented a residential unit in that complex since 2008. In 2013, landlord began charging residents, including tenant, a monthly $40 flat fee for several utilities, including water, sewer, and garbage services. Landlord incorporated a corresponding provision into tenant's subsequent rental agreements.

In November 2019, tenant defaulted on that month's rent charges, causing landlord to issue a statutory "72-hour notice" on November 8. The notice set forth landlord's intent to terminate tenant's rental agreement for nonpayment of rent. Landlord subsequently initiated this FED action on November 13. Tenant counterclaimed, alleging that landlord had violated the utility billing requirements set forth in ORS 90.315(4)(b). Tenant specifically alleged that, over the previous year, landlord had failed to (1) timely bill him in writing for each month's utility charges, as required under ORS 90.315(4)(b)(A); and (2) provide him with an explanation of the "pass through charges" in either the written rental agreement or separate billings, as required under ORS 90.315(4)(b)(B). Tenant claimed that, because landlord had failed to comply with ORS 90.315(4)(b) once each month over a year-long period, he was entitled to recover one month's "periodic rent," ORS 90.315(4)(f), for each of landlord's monthly violations.

The trial court made several factual findings: (1) tenant's monthly rent was $740 for the first 10 months and $825 for the final two months; (2) over the year-long period, landlord had charged tenant $40 monthly for utilities, totaling $480, but never had sent tenant corresponding written or electronic bills for those charges; (3) landlord never offered or provided the original utility bills for tenant's inspection; and (4) landlord had failed to explain, in either the rental agreement or bills, both how the utility providers

assessed their charges and how landlord distributed those charges among Fairfield tenants. The court did not find that landlord had overbilled or fraudulently represented the value of the utility and service charges. However, the court did find that landlord had failed to explain the pass-through billing arrangement in the tenant's rental agreement.

Ultimately, the trial court concluded that landlord had violated ORS 90.315(4)(b) 12 times, once each month over the course of a year. As noted, the maximum statutorily permissible award under ORS 90.315(4)(f) is an amount equal to one month's periodic rent or "twice the amount wrongfully charged," whichever is greater. Applying that calculation to the amount *actually billed* to tenant over the previous year would have totaled only $960 ($480 for the billed utilities at $40 per month, for 12 months, then doubled). However, the court awarded tenant $9,050 in statutory damages, concluding that ORS 90.315(4)(f) required an award totaling one month of *rent* awarded for each separate monthly utility billing. The court awarded $740 per month for the first 10 months and $825 per month for the last two months, totaling $9,050. The court then deducted tenant's unpaid rent for November (in addition to other unpaid charges), leaving tenant with a damages award of $7,195. Tenant was later awarded an additional $5,068 in costs and attorney fees through a supplemental judgment. Landlord appealed.

Before the Court of Appeals, the parties presented arguments mirroring their positions below. Landlord asserted that ORS 90.315(4)(f) is not a damages provision that should be applied "per violation," that the legislature clearly includes "per violation" language when that is its intent, and that ORS 90.315(4)(f) punishes "a course of conduct which may consist of one or many related acts occurring over an undefined period of time." Landlord further argued that the number of wrongful charges when a landlord is in noncompliance with ORS 90.315(4)(b) is immaterial. Rather, according to landlord, the statutory intent is to encourage landlords to comply by attaching a penalty for statutory violations sufficient to encourage landlords to take remedial action once they become aware of noncompliance with a

provision of the ORLTA. Tenant responded that the intent of ORLTA is to penalize landlords for each act of noncompliance and that, if damages are not imposed for each discrete violation, then landlords will be incentivized to remain noncompliant rather than addressing violations when they arise. The Court of Appeals agreed with landlord, concluding that landlord's reading comported with the plain text of ORS 90.315(4)(f) because the legislature had chosen wording that "[did] not direct a deciding court to award 'one month's periodic rent or twice the amount wrongfully charged to the tenant, whichever is greater' for each and every separate noncompliant bill sent by a landlord." *Shepard Investment*, 320 Or App at 531. Consistently with its understanding of the statute, that court held that tenant was entitled to "twice the amount wrongfully charged," totaling $960, and it therefore reversed and remanded the trial court's ruling. *Id.* at 532-33. We allowed review.

The question before us is one of statutory interpretation, which we resolve by applying our usual methodology of considering text, context, and any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). A statute's context includes, among other things, its immediate context—the phrase or sentence in which the term appears—and its broader context, which includes other statutes on the same subject. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

We turn now to applying those principles to ORS 90.315, the statute at issue, beginning with a brief overview of the ORLTA. In 1973, the legislature enacted the ORLTA, originally modeled after the Uniform Residential Landlord and Tenant Act to "clarify and restate the rights and obligations of tenants and landlords." *L & M Investment Co. v. Morrison*, 286 Or 397, 405, 594 P2d 1238 (1979). The ORLTA imposes obligations on, and creates remedies for, both landlords and tenants. As, the Court of Appeals explained, the monthly billing transparency requirements found in ORS 90.315(4)(b) were enacted in 2015 (Or Laws 2015, ch 388, § 8); the court succinctly described them as "the product of a coalition of landlord and tenant advocate groups" seeking to draft legislation in unison. *Shepard Investment*, 320 Or App at 526.

ORS 90.315 imposes obligations on landlords relative to utility or service charges. In 1997, the legislature added subsection (4) to that statute, permitting a landlord to pass utility or service charges on to tenants without treating such charges as rent (pass-through billing), but only if the landlord conforms to the specific requirements set out in subsection (4) when doing so. Or Laws 1997, ch 577, § 16. In 1999, the legislature added the penalty provision at issue here—discussed further below—to subsection (4). Or Laws 1999, ch 603, § 18. ORS 90.315(4) was not again substantively amended until 2015, when the legislature added stricter disclosure requirements related to service or utility charges. Or Laws 2015, ch 388, § 8. The legislature has not amended that statute since that time.

Turning to the text of subsection (4) of ORS 90.315, paragraph (a) permits landlords to bill tenants for utility or service charges on a pass-through basis, and it requires that a landlord describe the pass-through charges in the rental agreement.[1] ORS 90.315(4)(b)(A) and (B), the provisions giving rise to the parties' dispute here, provide as follows:

> "(b)(A)   If a rental agreement provides that a landlord may require a tenant to pay a utility or service charge, the landlord must bill the tenant in writing for the utility or service charge within 30 days after receipt of the provider's bill. If the landlord includes in the bill to the tenant a statement of the rent due, the landlord must separately and distinctly state the amount of the rent and the amount of the utility or service charge.
>
> "(B)   The landlord must provide to the tenant, in the written rental agreement or in a bill to the tenant, an explanation of:

---

[1]  ORS 90.315(4)(a) provides:

"[With exceptions for certain tenancies,] if a written rental agreement so provides, a landlord may require a tenant to pay to the landlord a utility or service charge or a public service charge that has been billed by a utility or service provider to the landlord for utility or service provided directly, or for a public service provided indirectly, to the tenant's dwelling unit or to a common area available to the tenant as part of the tenancy. A utility or service charge that shall be assessed to a tenant for a common area must be described in the written rental agreement separately and distinctly from such a charge for the tenant's dwelling unit."

"(i)　The manner in which the provider assesses a utility or service charge; and

"(ii)　The manner in which the charge is allocated among the tenants if the provider's bill to the landlord covers multiple tenants."

The remainder of ORS 90.315(4)(b), subparagraphs (C) through (E), include additional requirements and guidelines for landlords related to billing tenants for utility or service charges.[2] ORS 90.315(4)(c) describes specific services for which landlords may charge an additional amount to tenants above the original cost of the service and the procedure for doing so.[3] Those services can include cable television, direct satellite, other video subscription services, or internet

_____

[2]　ORS 90.315(4)(b)(C) through (E) provide:

"(C)　The landlord must:

"(i)　Include in the bill to the tenant a copy of the provider's bill; or

"(ii)　If the provider's bill is not included, state that the tenant may inspect the provider's bill at a reasonable time and place and that the tenant may obtain a copy of the provider's bill by making a request to the landlord during the inspection and upon payment to the landlord for the reasonable cost of making copies.

"(D)　A landlord may require that a bill to the tenant for a utility or service charge is due upon delivery of the bill. A landlord shall treat the tenant's payment as timely for purposes of ORS 90.302 (3)(b)(A) if the payment is made by a date that is specified in the bill and that is not less than 30 days after delivery of the bill.

"(E)　If a written rental agreement so provides, the landlord may deliver a bill to the tenant as provided in ORS 90.155 or by electronic means."

[3]　ORS 90.315(4)(c) provides:

"Except as provided in this paragraph, a utility or service charge may only include the cost of the utility or service as billed to the landlord by the provider. A landlord may add an additional amount to a utility or service charge billed to the tenant if:

"(A)　The utility or service charge to which the additional amount is added is for cable television, direct satellite or other video subscription services or for Internet access or usage;

"(B)　The additional amount is not more than 10 percent of the utility or service charge billed to the tenant;

"(C)　The total of the utility or service charge and the additional amount is less than the typical periodic cost the tenant would incur if the tenant contracted directly with the provider for the cable television, direct satellite or other video subscription services or for Internet access or usage;

"(D)　The written rental agreement providing for the utility or service charge describes the additional amount separately and distinctly from the utility or service charge; and

access or usage. ORS 90.315(4)(c). ORS 90.315(4)(d) explains the conditions that landlords must follow when amending rental agreements to require tenants to pay different utility or service charges than previously provided for in their rental agreements.[4] ORS 90.315(4)(e) explains that utility or service charges are neither rents nor fees and describes the proper statutory process for landlords to terminate a rental agreement for nonpayment of those charges.[5]

Finally, ORS 90.315(4)(f), the damages provision that is at issue in this case, provides as follows:

> "If a landlord fails to comply with paragraph (a), (b), (c) or (d) of this subsection, the tenant may recover from the landlord an amount equal to one month's periodic rent or twice the amount wrongfully charged to the tenant, whichever is greater."

Procedurally, as this court previously has explained, tenants can seek damages from landlords through an "'implicit withholding remedy: if the landlord is in noncompliance with [the landlord's] obligations under the ORLTA to the monetary damage of the tenant, the tenant can withhold rent[;] and if the landlord commences an FED action, the

---

"(E) Any billing or notice from the landlord regarding the utility or service charge lists the additional amount separately and distinctly from the utility or service charge."

[4] ORS 90.315(4)(d) provides:

"(A) A landlord must provide 60 days' written notice to a tenant before the landlord may amend an existing rental agreement for a month-to-month tenancy to require a tenant to pay a public service charge that was adopted by a utility or service provider or a local government within the previous six months.

"(B) A landlord may not hold a tenant liable for a public service charge billed to a previous tenant.

"(C) A landlord may not require a tenant to agree to the amendment of an existing rental agreement, and may not terminate a tenant for refusing to agree to the amendment of a rental agreement, if the amendment would obligate the tenant to pay an additional amount for cable television, direct satellite or other video subscription services or for Internet access or usage as provided under paragraph (c) of this subsection."

[5] ORS 90.315(4)(e) provides:

"A utility or service charge, including any additional amount added pursuant to paragraph (c) of this subsection, is not rent or a fee. Nonpayment of a utility or service charge is not grounds for termination of a rental agreement for nonpayment of rent under ORS 90.394 but is grounds for termination of a rental agreement for cause under ORS 90.392."

tenant can counterclaim'" for appropriate damages under ORS 90.315(4)(f). *Eddy v. Anderson*, 366 Or 176, 181, 458 P3d 678 (2020) (quoting *Napolski v. Champney*, 295 Or 408, 418, 667 P2d 1013 (1983)).

Turning now to the damages provision in dispute— ORS 90.315(4)(f)—as noted, the crux of the parties' dispute is whether, when a landlord "fails to comply" with certain statutory requirements, the tenant's permitted recovery of an amount equal to "one month's periodic rent or twice the amount wrongfully charged to the tenant" (whichever is greater), ORS 90.315(4)(f), is intended to apply per a tenant's monthly billing cycle. We first observe that the plain statutory text contains no express confirmation of that intended reading. Damages are awarded when a landlord "fails to comply." "Fails to comply," by its terms, is not limited to discrete failures; ongoing failures to comply are included. For example, if a landlord fails to provide a tenant "in the written rental agreement" an explanation of "the manner in which the provider assesses a utility or service charge," as required under ORS 90.315(4)(b)(B)(i), the harm is a lack of notice. The harm from that lack of notice does not exist only once. That harm persists for as long as the rental agreement lacks the required explanation, and the lack of notice continues.

Relatedly, ORS 90.315(4)(f) provides for damages in the amount of one month's periodic rent, or twice the "amount wrongfully charged." ORS 90.315 lists a wide variety of ways in which a pass-through utility charge—the basis for the parties' dispute here—can be wrongful. It can be substantively wrongful in amount, by, for example, including an incorrect or fraudulent amount, or an upcharge beyond the 10 percent limit provided in ORS 90.315(4)(c)(B). Under that provision, the harm would be the billing of an excessive or unauthorized amount. But a pass-through utility charge could also be procedurally wrongful—for example, an allegation that an undisputed charge had been assessed without a required disclosure in the rental agreement or other authorized means of notice. Again, that type of harm may be ongoing. Failures in the rental agreement have the potential to render all pass-through utility billing wrongful.

Because a landlord can fail to comply with paragraphs (a) through (d) of ORS 90.315(4) in ways that are ongoing, not discrete, and because utilities may be wrongfully charged not just in substance, but procedurally, so as to affect multiple services in multiple billings over time, the term "amount wrongfully charged," as that phrase appears in ORS 90.315(4)(f), is properly understood as an aggregate term encompassing both discrete and ongoing violations, *see Webster's Third New Int'l Dictionary* 72 (unabridged ed 2002) (defining "amount" as, among other things, "the total number or quantity : AGGREGATE"), that is, as determining the appropriate compensation for the aggregate harm resulting from the landlord's statutory violation.[6] The plain and natural reading of the text is that damages, for purposes of ORS 90.315(4)(f), are calculated by totaling the utilities wrongfully billed over time, doubling that figure ("twice the amount"), and then comparing it against the tenant's monthly periodic rent. Tenant's proposed interpretation would require us to insert language that has been omitted, such as "[Each billing cycle that] a landlord fails to comply with paragraph (a), (b), (c) or (d) of this subsection, the tenant may recover * * *." Or, alternatively, "the tenant may recover * * * an amount equal to one month's periodic rent or twice the amount wrongfully charged to the tenant [during a monthly billing cycle], whichever is greater." In construing a statute, however, we may not "insert what has been omitted." ORS 174.010.

Construing "wrongfully charged" as an aggregate term also harmonizes the damages provision in ORS 90.315(4)(f) with its close counterpart provision earlier in the same statute, set out in subsection (3). Subsection (3) of ORS 90.315 is the damages provision that applies to violations of subsection (2), which requires a landlord to give written notice, "at or before the commencement of the tenancy," of "any utility or service that the tenant pays directly to a utility or service provider that benefits, directly, the landlord or other tenants." As we noted in connection with

_____

[6] The dissent draws significance from the use of "amount" rather than "amounts." 371 Or at 304 (Nakamoto, J., dissenting). Given our conclusion that "amount" is an aggregate term, it is not clear why "amount wrongfully charged" would have a different meaning from "amounts wrongfully charged."

ORS 90.315(4), a failure to give such a notice arguably persists throughout the life of the tenancy, until such time as it is remedied. When a landlord fails to provide the notice required by subsection (2) of ORS 90.315, the measure of damages is structurally the same as ORS 90.315(4)(f): "[T]he tenant may recover twice the actual damages sustained or one month's rent, whichever is greater." ORS 90.315(3).

In *Brewer v. Erwin*, 287 Or 435, 445, 600 P2d 398 (1979), *abrogated on other grounds by McGanty v. Staudenraus*, 321 Or 532, 901 P2d 841 (1995), we construed the nature of statutory damages in the context of residential tenancy. In that case, we held that, "when other statutory indications are lacking, the key to damages seems to be to determine what kind of harm, in the setting of a normal residential rental transaction, can reasonably be said to lie within the contemplation of the protective provision of the act upon which the claim is founded."

Looking to the harm contemplated, tenant argues that interpreting the damages provision in subsection (4) of ORS 90.315 to apply to each discrete time period in which a violation occurred (in this case, every month) is necessary to prevent landlords from gaining a "windfall" from ongoing violations. But in so arguing, tenant fails to grapple with the structurally similar damages provision of ORS 90.315(3). Under tenant's reasoning, an ongoing notice deficiency would apparently be parsed into time periods where damages might accumulate; each month, each week, each day—tenant does not say. There is no indication, and tenant does not argue, that such a result would comply with the ORLTA's general requirement that the act "shall be so administered that an aggrieved party may recover *appropriate* damages." ORS 90.125(1) (emphasis added). Tenant offers no plausible explanation of how, or why, the text of ORS 90.315(3) would *not* impose damages per occurrence, but the text of ORS 90.315(4)(f) *would*, when the legislature used structurally similar language within the same statute. We have explained before that, "in the absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently." *State v. Cloutier*, 351 Or 68, 99, 261 P3d 1234 (2011); *see also PGE*, 317 Or at 611 (noting that "use of the same term throughout a statute

indicates that the term has the same meaning throughout the statute").

Although the legislative history surrounding ORS 90.315(4)(f) is not extensive, it does provide some insight. Namely, the legislature was primarily interested in ensuring proper notice to tenants, and the presence of a financial penalty to landlords was simply a mechanism to encourage such notice, and to encourage landlords to remedy deficiencies once they were discovered. Nothing in the history of ORS 90.315(4)(f) suggests a legislative intent to impose a particularly punitive penalty. And nothing indicates that the legislature envisioned the result that would follow from tenant's proposed interpretation, where $480 in utility pass-through billings, defective only in procedure and not amount, could result in $9,050 in penalties to the landlord. Rather, there is some indication that the legislature envisioned the monthly periodic rent as being the upper ceiling of potential penalties:

> "Section 18. Amends ORS 90.315, regarding utility or services charges that a landlord may pass directly through to a tenant from the utility provider, without treating such a charge as rent. (Increases in rent require a 30 day written notice; nonpayment supports a 72 hour termination notice.) One small amendment is to expand the world of such charges to include internet access or usage, an increasingly common practice * * *. *The amendment provides a penalty for landlord noncompliance. The penalty provision provides for an amount equal to one month's rent as a possible penalty*, reflecting an assumption that week-to-week tenancies are unlikely to have utility markups."

Testimony, Senate Committee on Business and Consumer Affairs, HB 3098, May 10, 1999, Ex O (comments of John Van Landingham (emphasis added)).

In sum, after considering the text, context, and legislative history of ORS 90.315(4)(f), we conclude that damages under that provision are calculated by aggregating the value of the utilities wrongfully billed, doubling that figure ("twice the amount"), and then comparing it against the tenant's monthly periodic rent. We therefore further conclude that the trial court erred when it awarded damages to tenant in the amount of 12 months of periodic rent

totaling $9,050.[7] Instead, tenant should have been awarded the greater of one month's periodic rent ($740 or $825) or twice the amount wrongfully charged in the aggregate.[8] Here, there is no dispute that twice the amount wrongfully charged, $960, is the larger of those two sums.[9]

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**NAKAMOTO, S. J.,** dissenting.

As tenant established at trial, landlord Shepard Investment Group LLC repeatedly, and in multiple ways,

---

[7] At argument in this case the parties theorized that a tenant, rather than asserting a counterclaim in response to an FED action, could affirmatively file a claim against a noncompliant landlord each month, upon improper utility billing. In this case we are not called upon to decide, and do not decide, whether such an affirmative claim is permissible, nor whether ORS 90.315(4)(f) would support multiple months of rent equivalent penalties when sought in the context of multiple separate actions brought by a tenant.

[8] In allowing limited review in this case, we declined to reach the question of whether the amount of monthly rent at the time of trial should be used when applying the ORS 90.315(4)(f) formula. In this case, twice the amount wrongfully charged in the aggregate is greater using either rent amount.

[9] The dissent does not seem to engage with the consequences of its position. We understand the dissent to contend that each separate violation of ORS 90.315(4)(a) through (d) should trigger the penalty clause. 371 Or at 302 (Nakamoto, J., dissenting) ("I conclude that paragraph (f) of ORS 90.315(4) can reasonably be read to require a penalty for each violation[.]"). The dissent adds that landlord committed four violations each month. *Id*. at 300 (Nakamoto, J., dissenting) (noting the trial court finding "that landlord violated four different requirements separately enumerated in ORS 90.315(4) during each of the 12 months at issue between 2018 and 2019").

If those premises are correct, then the dissent's argument implies that the award should have been one month's rent, times four violations per month, times 11 months—over $36,000. Yet the dissent instead agrees with the trial court that $9,050 is the proper measure of damages. *Id*. at 307 (Nakamoto, J., dissenting).

We also note that the dissent's position implies that the legislature's direction to award "twice the amount wrongfully charged the tenant" may never be given effect. Here, for example, the utility pass-through charges—even doubled—are only one-tenth the monthly rent, and so under the dissent's theory there is no circumstance in which the utility pass-through charges would ever be used to measure damages.

Moreover, assuming that there may exist rare leases where the utility pass-through charges exceed half the rent, it seems unlikely that the legislature would be so concerned about that uncommon event that it would enact a special provision solely to address it—and yet not mention it anywhere in the legislative history.

violated requirements in ORS 90.315(4), a subsection of a statute in the Oregon Residential Landlord and Tenant Act (ORLTA) that permits landlords to charge tenants for utilities, but only if landlords properly bill tenants and give tenants notice and disclosures when choosing that option. Paragraph (f) of that subsection penalizes a landlord who fails to meet the requirements associated with charging a tenant for utilities: "If a landlord fails to comply with paragraph (a), (b), (c) or (d) of this subsection, the tenant may recover from the landlord an amount equal to one month's periodic rent or twice the amount wrongfully charged to the tenant, whichever is greater." Because tenant established that landlord had engaged in multiple violations of ORS 90.315(4) every month during a 12-month period, the trial court awarded tenant 12 months of periodic rent. The majority today reverses the trial court and restrictively construes paragraph (f)—which says nothing about how it applies when a landlord violates different statutory requirements repeatedly over time—as plainly offering a limited, one-time remedy. I dissent.

        To read the majority opinion, one might conclude that landlord made one procedural mistake that it never rectified before seeking to evict tenant through its forceable entry and detainer (FED) action. But the trial court's factual findings establish that landlord violated ORS 90.315(4) in multiple ways, not merely by committing one violation that recurred monthly. The trial court found that landlord had assessed tenant a utility charge of $40 per month for his use of garbage service, water service, and sewer service at the apartment complex in which he was a tenant. The court found that the utility charge had been described as a flat fee charge for the utility services in both the 2017 and 2019 written rental agreements between the parties. The court further found that landlord never sent any written or electronic bills to tenant for the utility charge, nor did it offer him access to, or provide him with copies of, the underlying bills from the water, sewer, and garbage utility providers. The trial court found that the bills from the utility providers for water, sewer, and garbage services at the apartment complex all covered multiple tenants at the complex. However, the court found, landlord never provided tenant with an

explanation of the manner in which the providers assessed charges for the utility in either the written rental agreement or a utility bill to the tenant and did not describe the manner in which landlord allocated the charges for water, sewer, and garbage service among the tenants within the apartment complex.

Based on its findings, the trial court concluded that landlord had violated four different requirements separately enumerated in ORS 90.315(4) during each of the 12 months at issue between 2018 and 2019.[1] Landlord failed to bill tenant properly for the utility charge, violating two separate billing requirements. First, pursuant to ORS 90.315 (4)(b)(A), "the landlord must bill the tenant in writing for the utility or service charge within 30 days after receipt of the provider's bill," and, second, pursuant to ORS 90.315(4)(b)(C), the landlord must include in the bill "a copy of the provider's bill" or "state that the tenant may inspect the provider's bill at a reasonable time and place and that the tenant may obtain a copy of the provider's bill by making a request to the landlord ***."[2] In a third violation, landlord failed to provide tenant, in either a utility bill or the written rental agreement, with a written explanation of the manner in which the water, sewer, and garbage service providers assessed charges for utility service. *See* ORS 90.315(4)(b)(B)(i) (requiring the landlord to provide the tenant, "in the written rental agreement or in a bill to the tenant," an explanation of the "manner in which the provider assesses a utility or service charge"). And fourth, landlord failed to provide tenant, in either a utility bill or the written rental agreement, with a written explanation of the manner in which the charges for water, sewer, and garbage services were divided among the tenants, as required by ORS 90.315(4)(b)(B)(ii) (requiring the landlord to provide an explanation of the "manner in which the charge is allocated among the tenants if the provider's bill to the landlord covers multiple tenants").

---

[1] The ORLTA has a one-year statute of limitations. *See* ORS 12.125 (actions "arising under a rental agreement or ORS chapter 90 shall be commenced within one year").

[2] Tenant argued to the trial court that landlord had engaged in both billing violations without specifically citing ORS 90.315(4)(b)(C), and the trial court's findings of fact established both of landlord's billing violations.

The trial court awarded tenant $9,050 in statutory damages on tenant's counterclaim for all the statutory violations landlord committed in each of the 12 months at issue in the counterclaim. Essentially, the court assessed the greater of one month's rent or twice the utility charge for each month in which landlord violated statutory requirements, awarding the rental amount for 12 months (10 months of rent at $740 per month and two months of rent at $825 per month). As a result, although tenant owed landlord one month of rent and some utility and other charges, tenant was the prevailing party in the FED action.

The text of paragraph (f) of ORS 90.315(4) is silent with respect to how to assess a penalty for multiple and ongoing violations of the requirements in the statute permitting landlords to charge tenants for utilities. I disagree with the majority's conclusion that the text of that paragraph has but one "plain and natural" meaning: that a landlord is penalized once for multiple violations of ORS 90.315(4) by "totaling the utilities wrongfully billed over time, doubling that figure, and comparing it against the monthly periodic rent," with the greater amount being levied as the penalty. 371 Or at 295. Even if I were to accept the majority's view that the same statutory violation recurring on a monthly basis should be treated as a single violation that gives rise to a penalty equal to the greater of one month's rent or double the utility charges wrongfully assessed during those months, I would remain skeptical that the legislature intended not to penalize a landlord for other statutory violations. The one-sentence text of ORS 90.315(4)(f) suggests the contrary: A violation of any statutory requirement gives rise to the penalty ("[i]f a landlord fails to comply with paragraph (a), (b), (c) or (d) of this subsection," then "the tenant may recover from the landlord" the described penalty amount). The majority opinion does not explain why four separate statutory violations give rise to but one penalty, with the majority's discussion of context centering on hypothetical violations that repeat each month and no legislative history indicating that the legislature viewed the penalty as a one-time occurrence, no matter how many ways and how many times a landlord disregarded its obligations to its tenant when assessing the tenant for utility charges. To state it bluntly, the

court's decision declares without support that the legislature intended to allow a landlord immunity for disregarding multiple separate duties that attach when it chooses to charge a tenant for utilities. At the very least, tenant should have a judgment for an amount equal to four months of rent on his counterclaim, because tenant suffered from landlord's four different violations of statutory requirements.

My skepticism of the majority's decision further extends to the conclusions that the majority draws about the legislature's intention not to penalize landlords for ongoing violations of the same statutory requirement over time. I conclude that paragraph (f) of ORS 90.315(4) can reasonably be read to require a penalty for each violation and that the legislature would have understood that a penalty for each violation, including when repeated over time, would be applied when it enacted paragraph (f).

Again, the text is consistent with that reading: If the landlord fails to comply with the requirements in paragraphs (a), (b), (c), or (d) of ORS 90.315(4), then the penalty applies. The text does not specify how it is to be applied in a case like this one, with multiple statutory violations by the landlord that repeat monthly. However, the fact that the legislature provided that the penalty may be the amount of a month's rent—and will be if monthly rent is more than twice the amount of the wrongful utility charge—suggests that the legislature could have contemplated a month-by-month assessment of penalties in view of a tenant's monthly rent obligations.

The majority's admonishment about construing only the text before us—that to apply a penalty for the violations that landlord committed each month would be to insert phrases (such as "during a monthly billing cycle") that have been "omitted," 371 Or at 295—applies equally to the majority's position. The majority inserts qualifiers into paragraph (f) of ORS 90.315(4) that do not appear in the text in at least two ways. First, the majority implicitly adds that a landlord's various methods of noncompliance with the statutory requirements will be lumped together for purposes of the remedy: "If the landlord fails to comply with paragraph (a), (b), (c) or (d) of this subsection, [regardless of noncompliance

with multiple statutory requirements], the tenant may recover from the landlord an amount equal to one month's periodic rent or twice the amount wrongfully charged to the tenant, whichever is greater." Because the legislature was trying to ensure that landlords complied with the requirements for assessing utility charges, that reading undercuts the aim of the penalty.

Second, the majority, concluding that the phrase "amount wrongfully charged" in paragraph (f) is "an aggregate term," reads that paragraph with essentially another addition: "If the landlord fails to comply with paragraph (a), (b), (c) or (d) of this subsection, [regardless of noncompliance with multiple statutory requirements], the tenant may recover from the landlord an amount equal to one month's periodic rent or twice the amount wrongfully charged to the tenant [in each month, added together for all months in the time period covered by the claim], whichever is greater." But that is not the only way that the text may be understood. Paragraph (f) says that the penalty may be twice "*the amount* wrongfully charged," not "*amounts* wrongfully charged" over time. The determination of the penalty depends on a comparison of two amounts, "one month's periodic rent" and "the amount wrongfully charged," and, because the amount charged for utilities will be on a monthly basis, considering how utilities charge for services, it is reasonable to think that the legislature intended the comparison of "the amount" of the wrongful utility charge and the rent amount to occur monthly.

The majority explains that context, specifically, the penalty provision in subsection (3) of ORS 90.315, bolsters its view of paragraph (f). Subsection (2) requires a landlord to "disclose to the tenant in writing at or before the commencement of the tenancy any utility or service that the tenant pays directly to a utility or service provider that benefits, directly, the landlord or other tenants." The penalty for a landlord who "knowingly" fails to comply then is set out in subsection (3): "[T]he tenant may recover twice the actual damages sustained or one month's rent, whichever is greater." The majority suggests that, because a knowing failure to include a written disclosure at the commencement

of the tenancy as required by subsection (2) "arguably persists throughout the life of the tenancy, until such time as it is remedied," 371 Or at 295-96, the legislature must have understood that the penalty amount would be either one month's rent, even if the violation persisted over the time period covered by the claim, or else twice the amount of "damages sustained" over the time period covered by the claim, whichever is greater, *see id.* at 296. Notably, the majority views the penalty in paragraph (f) and the penalty in subsection (3) as containing "structurally the same" penalty. *Id.*

In two ways, that contextual analysis by the majority is unpersuasive. The majority assumes that the penalty in subsection (3) is either one month's rent or two times damages sustained over time. But that issue is not before the court, and the issue has not been previously addressed by the court, so one premise of the majority's analysis is merely an assumption. It is possible, assuming a continuing violation of the requirement in ORS 90.315(2) to provide a written disclosure at the outset of a tenancy, that the comparison in the penalty provided by subsection (3) is on a monthly basis: one month's rent or twice the damages—presumably, the amount that the tenant had paid for utilities that the landlord knew had benefited the landlord rather than the tenant—sustained in the month in which the violation continues.

But even if the majority correctly views the operation of subsection (3) of ORS 90.315 as a one-time comparison of one month's rent with twice the sum of damages sustained over the period covered by the claim, the text and context of the penalty provisions in subsection (3) and paragraph (f) of subsection (4) meaningfully differ. The penalty in subsection (3) compares the monthly rent amount with "twice the actual damages sustained" when a landlord charges the tenant for utilities that are delivered to areas other than the tenant's dwelling unit, such as common areas in an apartment complex, and knowingly fails to disclose that information in writing "at or before the commencement of the tenancy." ORS 90.315(2). The phrase "damages sustained" suggests a total summed amount for the claim, whereas the counterpart in paragraph (f) of subsection (4), "the amount

wrongfully charged to the tenant," suggests a singular amount, such as an overcharge billed to the tenant in a particular month. The context for the penalty in paragraph (f)—the variety of requirements that a landlord must meet, not all of which necessarily will involve the assessment of a utility charge, *e.g.*, ORS 90.315(4)(d)(C) (prohibiting termination of a rental agreement in certain circumstances)—further suggests that the legislature viewed the penalty as focused on each violation of a statutory requirement, rather than focusing on a cumulative sum of utility charges as compared to one month's rent.

An implicit premise underlying the majority opinion is that "the amount wrongfully charged" means the sum of utility charges assessed in any month during which the landlord violated at least one statutory requirement in ORS 90.315(4)(a) through (d). The legislative history of the 1999 amendments to ORS 90.315(4), which added the penalty provision now codified in paragraph (f), suggests that "wrongful charges" refers instead to charges for utilities that exceed the charges allowed by statute and not to the amount of the utilities assessed during months in which the landlord committed a violation of any statutory requirement, even if the landlord was otherwise entitled to pass on the utility cost to the tenant. If that legislative history correctly reflects the legislature's intention, the history serves as further evidence that the majority's view of how the penalty works in paragraph (f) is wrong.

In 1997, the legislature first addressed, and permitted landlords to assess tenants, actual costs for utility services without treating the charges as rent. Or Laws 1997, ch 577, § 16. The pass-through utility charge provisions were and remain codified in ORS 90.315(4). The law did not contain a penalty provision if the landlord violated any of the requirements associated with passing on utility charges to tenants.[3]

---

[3] The 1997 legislation included the following requirements: (1) the charge must be authorized in the written rental agreement; (2) pass-through charges for common areas must be set out separately; (3) the landlord could add no additional costs, such as administrative fees; and (4) unless the rental agreement spelled out the method of allocating utility charges to the tenant, the tenant had the right to a copy of the utility provider's bill as a condition to payment of the charges. Or Laws 1997, ch 577, § 16.

In 1999, the legislature amended ORS 90.315. Or Laws 1999, ch 603, § 18. The law largely amended paragraph (a) of subsection (4) and added paragraphs (b) through (d) to subsection (4) to address video and internet utility services. *Id.* Through the amendments, landlords could charge tenants for video and internet services as utilities, including an ability for landlords to add "an additional amount," up to a 10 percent profit, so long as the markup was disclosed on the tenant's bill and the total charge to a tenant was below the market price that the tenant would have to pay the provider for the same service individually. *Id.* All other utility services could not be marked up. The term "additional amount" was repeated throughout the amendments to subsection (4). *Id.*

Significantly, the amendment included a new penalty provision in paragraph (e) of subsection (4) of ORS 90.315, for violations of paragraphs (a) through (d), that is in substance the same one now found in paragraph (f). *Id.* The tenant could recover a penalty of one month's periodic rent or twice the amount wrongfully charged to the tenant.

In view of the added requirements for landlords as of 1999 in subsection (4) of ORS 90.315 pertaining to the restrictions on the amount of charges that landlords could assess, the legislature's addition of a penalty that could be the amount of one month's rent or twice the amount wrongfully charged suggests that part of the penalty determination depended on the amount of an overcharge for utilities. As for whether the 1999 legislature viewed the penalty as applying in any given month when the landlord violated the charging requirements, a witness testified that the penalty for landlord noncompliance with the requirements "provides for an amount equal to one month's rent as a possible penalty, reflecting an assumption that week-to-week tenancies are unlikely to have utility markups." Testimony, Senate Committee on Business and Consumer Affairs, HB 3098, May 10, 1999, Ex O (comments of John Van Landingham). That testimony is far from definitive, but it is consistent with the view that the legislation was directed at monthly billing and penalizing landlords with as much as a month's rental amount if they violated the requirements in any given month.

The procedural requirements added to ORS 90.315(4)(b) that landlord violated in this case were not added until 2015. *See* Or Laws 2015, ch 388, § 8. Thus, those amendments should not be considered in assessing what the 1999 legislature intended when it enacted the penalty now codified in paragraph (f). Substantively, the 2015 legislature retained the same penalty provision now codified in paragraph (f), and the parties have presented no legislative history indicating that the legislature intended to treat violations of the procedural requirements any differently than the requirements limiting the amount of the utility charges a landlord assessed to the tenant.

Finally, I disagree with the majority's suggestion, while citing ORS 90.125(1) (providing that the ORLTA "shall be so administered that an aggrieved party may recover appropriate damages"), that the penalty awarded by the trial court was inappropriate. 371 Or at 296. Although the majority contends that tenant offered no plausible explanation for why a four-figure damage amount is appropriate, *id.*, tenant explained in his brief, citing *Brewer v. Erwin*, 287 Or 435, 442, 600 P2d 398 (1979), that remedial statutory penalties in the ORLTA are designed to ensure landlord compliance with statutory obligations and to "make it unprofitable to engage in an improper practice when a defendant might otherwise be prepared to bear the risk of having to pay for the resulting harm as an acceptable business cost." In holding that punitive damages were unavailable for violations of the ORLTA, we explained in *Brewer* that the ORLTA included statutory damages that are often noncompensatory and that the legislature's uses of those types of statutory damages accomplish the same deterrent effect as punitive damages. *Id.* at 443. In my view, the penalty amount in this case serves as a deterrent for landlords, who can disregard the requirements for charging for utilities and who can replicate those violations with many different tenants. It was and is an appropriate amount and constitutes an exercise of the legislature's judgment about the appropriate penalty that would ensure a landlord's compliance with all of the statutory requirements concerning utility charges in the ORLTA. I respectfully dissent.